UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| | | |
|---|---|---|
| MINHAL ACADEMY OF TURNERSVILLE, INC. and JASO ASSOCIATES, PA | : : : | |
| *Plaintiffs*, | : : | 1:20-cv-01120-JHR |
| v. | : : | OPINION |
| TOWNSHIP OF WASHINGTON, and the ZONING BOARD OF ADJUSTMENT OF THE TOWNSHIP OF WASHINGTON | : : : : : | |
| *Defendants*. | : | |

This matter is before the Court on the Motion for Judgment on the Pleadings (the "Motion") filed by Plaintiffs Minhal Academy of Turnersville, Inc. ("MAT") and Jaso Associates, PA ("Jaso") (collectively "Plaintiffs"). [Dkt. 50]. For the reasons set forth below, the Court will deny Plaintiffs' Motion.

**I.   Background**

This case concerns Township of Washington ("the Township") and the Zoning Board of Adjustment of the Township of Washington (the "Zoning Board") (collectively "Defendants") and their refusal to permit Plaintiffs to operate a mosque in a commercial condominium complex in Washington Township, New Jersey. MAT "is a Muslim religious organization that serves approximately 35 congregants," most of whom reside in Washington Township. [Dkt. 1, Compl. ¶¶ 12–13]. In 2014, MAT began hosting prayer services on Friday afternoons in an office condominium in Sewell, New Jersey. [Compl. ¶¶ 16, 28–32]. Plaintiffs allege that this condominium is no longer big enough to accommodate MAT's growing congregation and that they are forced to rent hotel space, event halls, or Township park space for prayer services and

1

related activities at significant cost and inconvenience. [Compl. ¶¶ 50–84]. In 2018, Plaintiffs purchased three adjacent units in the same condominium complex with the intent of expanding their mosque. [Compl. ¶¶ 90–93].

Plaintiffs' mosque is located in a commercial plaza[1] in a "Neighborhood Commercial" ("NC") zoning district,[2] where "churches"[3] are prohibited under the Township's zoning code. [Compl. ¶¶ 94, 169]. Township zoning codes only permit churches to operate unconditionally in two zoning districts: institutional zoning districts ("INS") and mixed-use developments ("MUD"). [Compl. ¶ 166]. However, the Township's municipal code also authorizes the Township zoning board to grant variances that allow a land use that is otherwise prohibited. [Compl. ¶ 178]; Twp. Code § 125-20(A),(B). With a variance, churches are conditionally permitted in other zoning districts, including Neighborhood Commercial districts. *E.g.* Twp. Code § 285-29. The Township has granted use variances to operate churches for non-Muslim religious groups in the past. [*E.g.* Compl. ¶¶ 343, 353; Am. Answer ¶ 343, 353].

According to the Complaint, when Plaintiffs began to use their mosque in 2014, they obtained a certificate of occupancy from the Township to use the building as an "administrative office" "based upon the recommendation of the Mayor and [a] representative of the Township

---

[1] "The other businesses at the [condominium complex] include two dentist offices, a chiropractor, a foot and ankle center, an insurance agent, an engineering firm, a cardiologist, a medical addiction counseling service and a medical lab." [Compl. ¶ 100].

[2] NC zoning districts permit secular uses such as libraries, museums, post offices, neighborhood centers, food markets, medical and dental offices, and restaurants, among others. [Compl. ¶¶ 170–73].

[3] Township code defines a "church" as "[a] building used for public worship by a congregation, excluding buildings used exclusively for residential, educational, burial, recreational or other uses not normally associated with worship." Twp. Code § 285-9.

Zoning Officer.[4]  [Compl. ¶ 30].  In September 2018, after acquiring the additional condominium units, MAT applied for and received a zoning permit to use the property as a "Wellness and Healing Center" without any variance.  [Compl. ¶¶ 145, 148].  MAT claims that it sought approval as a "Wellness and Healing Center" only after consulting with and obtaining approval from "the Township Zoning Officer."  [Compl. ¶ 146].  Plaintiffs allege—but Defendants deny—that the "Township Zoning Officer was aware that MAT was operating as a Mosque and holding religious activities."  [Compl. ¶ 147].  MAT received a temporary Certificate of Occupancy from the Township to continue using the property [Compl. ¶ 149], and a "building permit from the Township to begin interior renovations."  [Compl. ¶¶ 150–51].

According to the Complaint, MAT's relationship with the Township and its neighbors soured after the March 15, 2019 mass shooting at mosques in New Zealand.  [Compl. ¶ 152].  In the wake of that tragedy, an MAT congregant asked Township police to provide protection for MAT's Friday prayer services.  [Compl. ¶ 153].  After Township police refused, the congregant posted about this refusal on Facebook.  [Compl. ¶ 154–55].  "Subsequently, upon information and belief, hundreds of local residents communicated with the Township Mayor and Township Police Chief's office complaining about MAT."  [Compl. ¶ 156].  On March 22, 2019, the Township's Construction Code Official "issued Notices and Orders of Penalty for work without a permit at the Property" and rescinded the zoning permit and certificate of occupancy issued to MAT.  [Compl. ¶¶ 157–61].

On August 14, 2019, MAT applied to the Zoning Board for a variance that would allow MAT to use its space as a mosque.  [Compl. ¶ 185].  "MAT also sought a site plan waiver, as

---

[4] The Complaint alleges that the Township's mayor and zoning officers knew that MAT was using the property to host religious services and that MAT enjoyed a positive relationship with the Township and MAT's neighbors.  [Compl. ¶¶ 46–49].

3

MAT proposed no changes to the building or the site, including lighting, landscaping, parking or circulation." [Compl. ¶ 188]. On October 7, 2019, MAT attended a hearing before the Zoning Board concerning its application. [Compl. ¶ 202]. MAT indicated that it would agree to "reasonable conditions of approval," including limiting activities that could be conducted onsite. [Compl. ¶ 206]. MAT's professional planner, James Miller ("Miller") attended the hearing and testified that MAT satisfied the criteria necessary for conditional approval and a site plan waiver, and that the benefits to the community of approving the application outweighed any detriments. [Compl. ¶¶ 219–38]. Miller also testified that "the proposed mosque was consistent with many other uses in the NC zoning district in terms of impact and activity level." [Compl. ¶ 230].

Despite Plaintiffs' presentation, the Zoning Board voted to deny Plaintiffs' use variance application at the hearing and adopted this denial by resolution on November 18, 2019 ("the Resolution"). [Compl. ¶¶ 253–55]. Based on the Complaint and Defendants' opposition brief, it appears that the Township denied Plaintiffs' application due to concerns over the capacity and configuration of the parking lot for the complex where the mosque is located. [Compl. ¶¶ 262–69; Dkt. 56 at 25–26, 30]. The parties disagree as to the propriety of the Zoning Board's conclusion and the method used to reach that conclusion. Plaintiffs allege that the Zoning Board did not apply the proper legal standard when reviewing Plaintiffs' application. [Compl. ¶¶ 250, 290]. Plaintiffs also allege that the Resolution only provides conclusory justifications for its decision, and that the conclusions contradicted record facts. [Compl. ¶¶ 257–269]. Plaintiffs allege that the proffered reasons were merely "pretextual justifications for denial," [Compl. ¶ 270], and that the Zoning Board "has not denied prior church applications" over similar concerns. [Compl. ¶ 271]. "Upon information and belief," Plaintiffs allege that the Zoning Board scrutinized their variance application more rigorously than similar applications from non-

Muslim institutions. [*E.g.* Compl. ¶¶ 292–94, 309]. Defendants do not admit or outright deny these allegations. [Am. Answer ¶¶ 292–94, 309].

Plaintiffs filed this lawsuit alleging violations of the Religious Land Use and Institutionalized Persons act of 2000, 42 U.S.C. § 2000cc(a) ("RLUIPA") (Counts I–III); 42 U.S.C. § 1983 based on Plaintiffs' rights under the First Amendment's Free Exercise Clause (Count IV); 42 U.S.C. § 1983 based on Plaintiffs' equal protection rights under the Fourteenth Amendment (Count V); New Jersey Common Law (Count VI); and the New Jersey Law Against Discrimination ("NJLAD") (Count VII). [Dkt. 1]. Defendants filed their initial answer [Dkt. 9] which Plaintiffs moved to strike. [Dkt. 22]. Judge Donio issued an order withdrawing Plaintiffs' motion to strike without prejudice and requiring Defendants to serve an amended answer. [Dkt. 34]. Defendants filed an amended answer pursuant to this order. [Dkt. 36]. Plaintiffs then filed the present motion for judgment on the pleadings. [Dkt. 50].

## II.   Jurisdiction

Jurisdiction in this Court is proper under 28 U.S.C. § 1331. Venue is proper under 28 U.S.C. § 1391.

## III.   Legal Standard

"A motion for judgment on the pleadings under Rule 12(c) 'is analyzed under the same standards that apply to a Rule 12(b)(6) motion.'" *Wolfington v. Reconstructive Orthopaedic Assocs. II PC*, 935 F.3d 187, 195 (3d Cir. 2019) (*Revell v. Port Auth. of N.Y. & N.J.*, 598 F.3d 128, 134 (3d Cir. 2010)). "A motion for judgment on the pleadings will be granted … if, on the basis of the pleadings, the movant is entitled to judgment as a matter of law." *DiCarlo v. St. Mary Hosp.*, 530 F.3d 255, 262 (3d Cir. 2008) (citing *Allah v. Brown*, 351 F. Supp. 2d 278, 280 (D.N.J. 2004)). Under Rule 12(c) "'judgment will not be granted unless the movant clearly

establishes that no material issue of fact remains to be resolved and that [the movant] is entitled to judgment as a matter of law.'" *Rosenau v. Unifund Corp.*, 539 F.3d 218, 221 (3d Cir. 2008) (quoting *Jablonski v. Pan Am. World Airways, Inc.*, 863 F.2d 289, 290–91 (3d Cir. 1988)). "[The Court] must view the facts presented in the pleadings and the inferences to be drawn therefrom in the light most favorable to the nonmoving party." *Id.*

As with a motion to dismiss under Rule 12(b)(6), courts generally cannot consider materials outside of the pleadings, but may consider materials that are "expressly relied upon or integral to the pleadings or matters of public record." *Syncsort Inc. v. Sequential Software, Inc.*, 50 F. Supp. 2d 318, 325 (D.N.J. 1999) (collecting cases).

**IV.     Analysis**

Although Plaintiffs assert throughout their brief that they seek judgment on the pleadings with respect to Counts I–IV and VII of their Complaint, their substantive briefing only addresses their RLUIPA claims alleged at Counts I–III. Because Plaintiffs did not brief their § 1983 (Count IV) and NJLAD (Count VII) claims, the Court will not analyze these claims and will only consider Plaintiffs' RLUIPA claims.

Congress enacted the RLUIPA "in order to provide very broad protection for religious liberty." *Holt v. Hobbs*, 574 U.S. 352, 356, 135 S. Ct. 853, 859, 190 L. Ed. 2d 747 (2015) (quoting *Burwell v. Hobby Lobby Stores, Inc.*, 573 U.S. 682, 693, 134 S. Ct. 2751, 2760, 189 L. Ed. 2d 675 (2014)). "Congress passed RLUIPA upon finding that local zoning boards would use 'vague and universally applicable reasons,' such as traffic or aesthetics, to contrive widespread discrimination on the basis of religion." *Islamic Soc'y of Basking Ridge v. Twp. of Bernards*, 226 F. Supp. 3d 320, 341 (D.N.J. 2016) (quoting 146 Cong. Rec. S7, 774–01, (daily ed. July 27, 2000) (joint statement of Sens. Hatch & Kennedy), 2000 WL 1079346, at *S7774). The

RLUIPA contains three relevant provisions that address restriction of religious exercise through land-use rules:

> **(a) Substantial burdens**
>
> **(1) General rule**
>
> No government shall impose or implement a land use regulation in a manner that imposes a substantial burden on the religious exercise of a person, including a religious assembly or institution, unless the government demonstrates that imposition of the burden on that person, assembly, or institution--
> **(A)** is in furtherance of a compelling governmental interest; and
> **(B)** is the least restrictive means of furthering that compelling governmental interest.
>
> ….
>
> **(b) Discrimination Exclusion**
>
> **(1) Equal terms**
>
> No government shall impose or implement a land use regulation in a manner that treats a religious assembly or institution on less than equal terms with a nonreligious assembly or institution.
>
> **(2) Nondiscrimination**
>
> No government shall impose or implement a land use regulation that discriminates against any assembly or institution on the basis of religion or religious denomination.

42 U.S.C.A. § 2000cc.  Plaintiffs allege violation of the RLUIPA's substantial burden, equal terms, and nondiscrimination provisions and move for judgment on the pleadings for all three. The Court will analyze each claim separately below.[5]

---

[5] There appears to be no dispute that the Township's denial of a variance under the Township's zoning laws constitutes a "land use regulation" as defined in the RLUIPA.  *See* 42 U.S.C. § 2000cc-5(5) ("The term 'land use regulation' means a zoning or landmarking law, or the application of such a law, that limits or restricts a claimant's use or development of land (including a structure affixed to land), if the claimant has an ownership, leasehold, easement,

### a. Substantial Burden

For a substantial burden claim, plaintiffs have "the initial burden of demonstrating that the land use regulation 'actually imposes a substantial burden on religious exercise.'" *Garden State Islamic Ctr. v. City of Vineland*, 358 F. Supp. 3d 377, 380 (D.N.J. 2018) (quoting *Muslim Ctr. of Somerset Cty., Inc. v. Borough of Somerville Zoning Bd. of Adjustment*, No. SOM-L-1313-04, 2006 WL 1344323, at *6 (N.J. Super. Ct. Law Div. May 16, 2006)). If plaintiffs meet this initial burden, the burden shifts to defendants "to show that the challenged regulation 'is in furtherance of a compelling governmental interest" and "is the least restrictive means of furthering' that interest." *Id.* (quoting *Muslim Ctr. of Somerset Cty., Inc.*, 2006 WL 1344323, at *6).

"[D]emonstrating substantial burden requires more than a general limitation on free exercise. Rather, the test requires a showing that the burden prevents adherents from conducting or expressing their religious beliefs or causes them to forgo religious precepts." *The Lighthouse Inst. for Evangelism, Inc. v. City of Long Branch*, 406 F. Supp. 2d 507, 515 (D.N.J. 2005), *aff'd in part, vacated in part sub nom. Lighthouse Inst. for Evangelism, Inc. v. City of Long Branch*, 510 F.3d 253 (3d Cir. 2007). "A mere inconvenience is not enough to meet the 'substantial burden' requirement, nor is it a substantial burden when a law merely 'operates so as to make the practice of religious beliefs more exp[e]nsive.'" *Id.* (quoting *Braunfeld v. Brown*, 366 U.S. 599, 605, 81 S. Ct. 1144, 6 L. Ed. 2d 563 (1961)). Instead, a substantial burden is "one that necessarily bears direct, primary, and fundamental responsibility for rendering religious exercise

---

servitude, or other property interest in the regulated land or a contract or option to acquire such an interest.").

... effectively impracticable." *Lighthouse Inst.*, 100 F. App'x at 77 (quoting *Civil Liberties for Urban Believers (C.L.U.B.) v. City of Chicago*, 342 F.3d 752, 761 (7th Cir. 2003)).

Plaintiffs are not entitled to judgment on the pleadings on their substantial burden claim because they have not met their threshold burden of establishing that the Township's zoning laws or enforcement thereof constitute a "substantial burden" on their religious exercise. Plaintiffs' Complaint alleges that, without their own space in which to host prayer services, they must rent space elsewhere. [*E.g.*, Compl. ¶¶ 62, 64, 67, 70, 74, 176]. While renting space for religious events may cause Plaintiffs inconvenience and "great expense" [Compl. ¶ 176], the Complaint does not suggest that Defendants have rendered Plaintiffs' religious exercise "impracticable." To the contrary, the Complaint even alleges that Defendants have facilitated Plaintiffs' religious exercise by renting Township property to Plaintiffs for religious celebrations. [Compl. ¶ 65]. Moreover, the Complaint acknowledges that "churches" such as Plaintiffs' proposed mosque are permitted in two zoning districts in the Township, and conditionally permitted in other districts. [Compl. ¶¶ 166–67]. *See Lighthouse Inst. for Evangelism Inc.*, 100 F. App'x at 76–77 (upholding dismissal of preliminary injunction for religious group's failure to establish "substantial burden" "because it had operated for years at the rented location in the district and thus its opportunity for religious exercise was not curtailed by the Ordinance. Further, it is undisputed that the Mission could have operated as a church by right in other districts in the City." (citations and quotations omitted)).

At bottom, Plaintiffs allege that Defendants' denial of a use variance has made their religious exercise inconvenient and costly, but nothing more. The Court will therefore deny Plaintiffs' motion on this ground because they have not conclusively shown that Defendants' denial caused them substantial hardship.

### b. Equal Terms

To succeed under the RLUIPA's equal terms provision, a plaintiff must show that "(1) it is a religious assembly or institution, (2) subject to a land use regulation, which regulation (3) treats the religious assembly on less than equal terms with (4) a nonreligious assembly or institution (5) that causes no lesser harm to the interests the regulation seeks to advance." *Lighthouse Inst.*, 510 F.3d at 270.

Plaintiffs are not entitled to judgment on the pleadings on their equal terms claim because the Complaint does not identify a "nonreligious assembly or institution" that received comparatively better treatment under the zoning laws at issue here. The Complaint identifies several other religious institutions which allegedly received comparatively favorable treatment under Township zoning laws but does not offer examples of secular institutions. [*See* Compl. ¶¶ 305–88]. The Complaint includes several vague and conclusory allegations that Township zoning laws generally favor secular institutions[6] and that, "upon information and belief," secular institutions have had applications for variances approved without the same amount of scrutiny.[7] These indefinite claims do not "clearly establish" that Plaintiffs are entitled to judgment as a matter of law. *Rosenau*, 539 F.3d at 221 (quoting *Jablonski*, 863 F.2d at 290–91). Moreover, Defendant denies these allegations or does not admit that they are true [*e.g.* Dkt. 36 ¶¶ 2, 294], which only underscores that issues of fact remain. Thus, Plaintiffs are not entitled to judgment on the pleadings on their equal terms RLUIPA claim. *See Adhi Parasakthi Charitable, Med.,*

---

[6] [Compl. ¶ 2 ("[T]he Township's land use laws regulating religious institutions discriminate against such uses and favor nonreligious assembly and institutional land uses such as libraries, museums, post offices, banks, food markets, restaurants and neighborhood centers.")].

[7] [Compl. ¶ 294 ("Upon information and belief, some nonreligious institutions or assemblies that have applied for use variances have had their applications approved without being subject to extensive questioning in advance of the zoning board's decision.")].

*Educ., & Cultural Soc'y of N. Am. v. Twp. of W. Pikeland*, 721 F. Supp. 2d 361, 385 (E.D. Pa. 2010) (granting defendant's motion for summary judgment on plaintiff's equal terms claim because plaintiff "has not pointed to unequal treatment when compared to nonreligious entities.").

      c.  **Nondiscrimination**

"Under RLUIPA's nondiscrimination provision, governments are prevented from discriminating on the basis of 'religion or religious denomination.'" *Twp. of W. Pikeland*, 721 F. Supp. 2d at 385. Plaintiffs may establish discrimination by showing (1) a facially discriminatory policy; (2) a facially neutral policy enforced in a discriminatory manner; or (3) a facially neutral policy purposefully designed to favor some and/or burden others. *Hassan v. City of New York*, 804 F.3d 277, 294 (3d Cir. 2015), *as amended* (Feb. 2, 2016); *see also Islamic Soc'y of Basking Ridge*, 226 F. Supp. 3d at 344 (applying *Hassan* to RLUIPA nondiscrimination claims). While plaintiffs must show that defendants acted with discriminatory intent, they need not show that defendants acted with "invidious motive." *Hassan*, 804 F.3d at 297. Defendants who discriminate against plaintiffs when applying land-use rules are strictly liable and cannot avoid liability by justifying their discriminatory conduct. *Islamic Soc'y of Basking Ridge*, 226 F. Supp. at 351 (citing *Lighthouse Inst.*, 510 F.3d at 268–69).

Unless a zoning law expressly discriminates on the basis of religion or government officials expressly enforce that provision discriminatorily on the basis of religion, plaintiffs alleging an RLUIPA nondiscrimination claim must prove their case by identifying similarly situated organizations of a different religion that received comparatively favorable treatment. *Id.* at 344–47 (citations and quotations omitted); *see also Albanian Associated Fund v. Twp. of Wayne*, No. CIV.A. 06-CV-3217PGS, 2007 WL 2904194, at *11 (D.N.J. Oct. 1, 2007) (noting

that the Third Circuit applies "similarly situated" standard to equal treatment and nondiscrimination claims). "[T]he standard for determining whether comparators are similarly situated depends on whether they 'impact[ ] the city's declared goals in the same way'" as the plaintiff, and not on whether the comparators "propose[ ] the same combination of uses.'" *Islamic Soc'y of Basking Ridge*, 226 F. Supp. 3d at 347 (quoting *Lighthouse Inst.*, 510 F.3d at 264–65).

Plaintiffs argue that Defendants discriminated against them by "denying Plaintiff's application for a site plain waiver" and by "failing to approve Plaintiff's application with conditions" because Plaintiffs are a Muslim institution. [Dkt. 50 at 14–18]. They also argue that Defendants discriminated against Plaintiffs by applying "different standards to Plaintiffs" than Defendants would have to a non-Muslim institution when reviewing Plaintiffs' application. [Dkt. 50 at 13].

As alleged in Plaintiffs' Complaint, Defendants' zoning laws and enforcement of these laws were not discriminatory on their face. The Complaint does not identify a land-use law that overtly singles out the Muslim religion or Muslim institutions. Nor does the Complaint plead any facts suggesting that Defendants "expressly applie[d] different standards on the basis of religion" when interpreting the Township's land-use laws.[8] *Cf. Islamic Soc'y of Basking Ridge*,

---

[8] The Complaint alleges that "the zoning board was knowingly responsive to Township residents who were hostile toward MAT and the Muslim community, was "motivated to deny MAT's Application based on the hostility of local Township residents," and "gave effect to the private biases of Township residents." [Compl. ¶¶ 286–89]. Defendants deny these allegations. [Am. Answer ¶¶ 286–89]. Moreover, these speculative allegations do not conclusively prove that Defendants—and not Township residents—acted discriminatorily. *See Irshad Learning Ctr. v. Cty. of Dupage*, 937 F. Supp. 2d 910, 939 (N.D. Ill. 2013) ("[D]iscriminatory statements, while often directed at County officials, were made by members of the public. There is no evidence of discriminatory statements by the Board members or any other County officials or employees, and no other basis for the conclusion that pressure from prejudiced community members influenced the vote.").

226 F. Supp. 3d at 345–46 (finding that a local government facially discriminated against the plaintiff by interpreting parking ordinances "as expressly applying a 3:1 ratio to Christian churches but not Muslim mosques."). Plaintiffs appear not to disagree, as their arguments focus on the similarities between their variance application and land use permits which non-Muslim comparator institutions obtained. [Dkt. 50 at 14–18]. Thus, in order to establish their RLUIPA nondiscrimination claim, Plaintiffs must show that the Township treated Plaintiffs worse than non-Muslim comparator institutions because Plaintiffs are Muslim.

Fact issues and an inadequate record prevent the Court from deciding this issue in favor of Plaintiffs. Even if Defendants categorically accepted the facts alleged in the Complaint with respect to Plaintiffs' comparator institutions—which they do not—Plaintiffs are not entitled to an inference that these comparator institutions were "similarly situated" on a motion for judgment on the pleadings. *Rosenau*, 539 F.3d at 221 ("[The Court] must view the facts presented in the pleadings and the inferences to be drawn therefrom in the light most favorable to the nonmoving party."). Determining whether Plaintiffs and their proposed comparators are similarly situated will require a detailed analysis of variance applications, hearing transcripts, hearing minutes, and/or resolutions, which is inappropriate at this stage of the litigation.[9] Similarly, Defendants

---

[9] Defendants attached several such documents to their opposition brief. Defendants also cite these documents to argue that Plaintiffs' Complaint is factually incomplete, and to contradict Plaintiffs' discrimination claims. Plaintiffs did not attach any documents to their Complaint or to the present motion. While Plaintiffs may have relied on some of the documents that Defendants have attached when drafting their Complaint, it is unclear which documents were relied upon. The Court doubts that it can consider Defendants' attachments to the extent that Defendants rely on them without converting Plaintiffs' motion into a motion for summary judgment. *See Bensalem Masjid, Inc. v. Bensalem Twp.*, No. CV 14-6955, 2015 WL 5611546, at *3 (E.D. Pa. Sept. 22, 2015) (declining to consider similar documents from land use variance hearings attached to the defendant's motion to dismiss) (citations omitted). Moreover, "as evidenced by the opposing interpretations of Board's former zoning variances, these materials are highly contested and discovery would aid the Court in interpreting them." *Id.*

deny the Complaint's allegations that Plaintiffs' application complied with applicable zoning codes [Am. Answer ¶ 267], and that Defendants applied Township zoning codes differently to Plaintiffs than to other religious institutions. [Am. Answer ¶ 290]. Rule 12(c) requires the Court to accept these denials as true, even if evidence eventually shows otherwise. *Rosenau*, 539 F.3d at 221; *see also Twp. of W. Pikeland*, 721 F. Supp. 2d at 386 (denying the defendant's motion for summary judgment because "a genuine issue of material fact remains as to whether the Ordinance was discriminatorily applied"). Ultimately the Court finds that Plaintiffs' fact-intensive RLUIPA nondiscrimination claim should be resolved with a complete factual record.

### V. Conclusion

For the reasons discussed above, the Court will deny Plaintiffs' Motion. An appropriate order will follow.

August 25, 2021                                          /s/ Joseph H. Rodriguez

                                                         Joseph H. Rodriguez, USDJ